CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 SEP -3  PM 1: 14

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ERNESTO RODRIQUEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:14-CV-00093 |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner, § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION TO REVERSE THE DECISION OF THE COMMISSIONER AND TO REMAND FOR FURTHER CONSIDERATION

Plaintiff ERNESTO RODRIQUEZ, proceeding *pro se* and *in forma pauperis*, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 423(d)(A)(1), 1382c(a)(3). See 42 U.S.C. § 405(g). Both parties have filed briefs in this cause. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED.

### I.
### THE RECORD

Plaintiff filed an application for DIB and SSI on December 27, 2010, seeking disability benefits from November 24, 2010, his alleged onset date, claiming "upper hip lower back, right leg numb" (Tr. 101-121, 143). Plaintiff was evaluated on the basis of Hepatitis C and

Degenerative Joint Disease of the lumbar spine and right hip. (Tr. 38). His applications were denied both initially and on reconsideration (Tr. 38-41).

Plaintiff requested and received a hearing before an ALJ which was conducted on November 27, 2012 (Tr. 21-37). At the hearing, plaintiff was represented by an attorney and testimony was received from plaintiff and from a vocational expert (Tr. 21-22). At that time, plaintiff was 53 years old and had an eleventh grade education (Tr. 25). The impairments he claimed were strictly physical (Tr. 24). Plaintiff testified he was in a motor vehicle accident in 2005 in which he injured his neck, back, and head. He said a lack of insurance prevented him from seeing a specialist about his head injury, but a doctor at Northwest Hospital had told him that "inside [his] head was so swollen that [he] could either have something broken or [he] could have a vein pinched in there." Plaintiff stated the doctor at the District Clinic treated him with medication, but that he still suffered bad headaches (Tr. 26). Plaintiff said he had also suffered from a hernia which was repaired and, before approving him for surgery, plaintiff was examined by a cardiologist who told him he had suffered a heart attack (Tr. 26) and that his breathing was 23% under normal (Tr. 28). Plaintiff said he suffered dizziness and shortness of breath (Tr. 27). He said he suffered pain in his neck, head, and all on his left side (Tr. 27).

Plaintiff testified he could walk two or three blocks at the most and then had to rest because he began sweating and itching as he had before a previous episode in which he had suffered a collapse which doctors attributed to exhaustion (Tr. 28). He stated he could lift ten pounds (Tr. 28). Plaintiff said he had been diagnosed with Hepatitis, was treated with medication, and had stopped drinking (Tr. 28). Plaintiff also testified he had trouble stooping and with standing for "quite a period of time" and could no longer garden in his yard (Tr. 28).

Plaintiff stated he could not climb a ladder because of the dizziness, suffered shortness of breath and fatigue every day (Tr. 29), and suffered numbness in his hands, feet and right leg (Tr. 30-31).

Plaintiff further testified he had chest pain about twice a week which was most often experienced at night and that he took nitroglycerin for it (Tr. 32-33).

Testimony was received from a Vocational Expert (the VE), Mr. Harden (Tr. 34).

The VE testified plaintiff's previous work was as a forklift operator, SVP: 3, medium (Tr. 35). He said no skills were transferrable from the job of forklift operator (Tr. 36). When presented with a hypothetical person of plaintiff's age, education, and work history, who should avoid unprotected heights, could walk no more than about three blocks at a time, and could occasionally stoop, the VE stated there were other jobs such a person could perform which were light but not sedentary. Such jobs were machine tender (DOT # 556.685-038), SVP: 2 and light with 30,000 jobs in the U.S. and 2,400 in Texas; a package handler (DOT # 559.687-074), SVP: 2 and light, with 65,000 jobs in the U.S. and 10,000 in Texas; and a bench assembler (DOT # 706.684-042), SVP: 2 and light, with 100,000 jobs in the U.S. and 5,000 in Texas (Tr. 35).

Upon cross-examination in which the hypothetical was altered to include more severe restrictions of sitting, standing, and walking less than two hours in an eight hour workday, the VE testified that none of the suggested jobs could be performed as full-time employment and the added restrictions would describe a job as something less than sedentary (Tr. 36).

On December 19, 2012, the ALJ rendered an unfavorable decision, finding plaintiff was not under a disability as defined by the Social Security Act at any time from November 24, 2010, his alleged onset date, through the date of the ALJ decision of December 19, 2012 (TR. 10).

At the first step of the five-step analysis, the ALJ found plaintiff was insured through December 31, 2012, and had not engaged in substantial gainful activity during the period from his

alleged onset date of November 24, 2010 through the date of the decision (Tr. 12)[1]. At step 2, the ALJ determined plaintiff had the following severe medical impairments: lumbar degenerative disc disease, degenerative joint disease in the right hip, cardiovascular disease, hepatitis C, and obesity (20CFR 404.1520(c) and 416.9020(c)) (Tr. 12).

At the third step, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926) (Tr. 13).

As to plaintiff's residual functional capacity (RFC), the ALJ found that, through the date of the decision, plaintiff retained the residual functional capacity (RFC)[2] to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for two hours in an eight-hour workday, and sit six hours in an eight-hour workday (Tr. 13). The ALJ further found plaintiff could occasionally stoop and should avoid working at unprotected heights (Tr. 13).

At the fourth step, the ALJ found that, based on the RFC assessment, plaintiff was unable to perform the requirements of his past relevant work (Tr. 15).

The ALJ determined that, considering plaintiff's age (54 years old, an individual closely approaching advanced age 20 C.F.R. 404.1563 and 416.963), his eleventh grade education, work experience as a forklift operator with skills which are not transferrable, the Medical-Vocational Rules support a finding of "not disabled" (SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ further concluded that based on these same factors, plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national

---

[1]The ALJ numbered the various steps of his decision inaccurately in his opinion. His conclusions are discussed in this opinion as if they had been correctly numbered.

[2]Residual functional capacity is what the claimant can still do despite the claimant's limitations. 20 C.F.R. § 220.120(a)

economy such as machine tender, SVP: 2 and light with 30,000 jobs in the U.S. and 2,400 in Texas; a package handler, SVP: 2 and light, with 65,000 jobs in the U.S. and 10,000 in Texas; and a bench assembler, SVP: 2 and light, with 100,000 jobs in the U.S. and 5,000 in Texas (Tr. 35).

Accordingly, the ALJ concluded that plaintiff was not disabled (Tr. 16-17).

On February 20, 2014, the Appeals Council denied plaintiff's request for review rendering the ALJ's determination that plaintiff was not under a disability during the relevant time period the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the

Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUE

Plaintiff presents various records to the Court as attachments to his August 13, 2014 Brief and clearly desires the Court to review these documents. It appears plaintiff feels these records show the ALJ erred in making the determination of non-disability. Plaintiff further states he is suffering from hypertension, coronary artery disease, hyperlipidemia, cardiomyopathy, hepatitis C, arthritis, head trauma from a motor vehicle accident, right occipital nodule with headaches, diabetes mellitus, COPD, and depression. The plaintiff is proceeding pro se. Based upon the brief he submitted, it is doubtful he understands the substantial evidence rule or the restrictions governing consideration of new evidence[3]. Further, and as pointed out by defendant, the majority of the documents plaintiff has submitted are either already in the record or are not cognizable. Regardless of whether plaintiff does or does not understand the law governing social security appeals, he is not at a detriment because of his pro se status in light of the analysis of the evidence set out herein.

---

[3] The Court suspects that many lay persons like plaintiff expect the appeal to be a de novo review by this Court.

## IV.
## MERITS

Plaintiff does not argue any specific error in his brief. Of the nineteen pages attached to plaintiff's brief, the first three consist of a letter to the Court from a Licensed Professional Counselor at the Wyatt Clinic. This letter contains no information relevant to plaintiff's claim of disability. The fourth page of plaintiff's attachment is instructions for self care from a Dr. Nazim of the Texas Tech Surgery Clinic dated August 27, 2012. Nothing about this document indicates the reason for the restrictions listed or that they are permanent. The fifth page is an assessment of disability form directed to the Texas Health and Human Services Commission from a Dr. Pickens dated March 31, 2014. Nothing on this form indicates it applies to the period from November 24, 2010, the alleged onset date, through December 31, 2012, the last date on which plaintiff was insured. The Court will give these documents no consideration.

The tenth through the nineteenth pages consist of a letter from plaintiff's attorney, a page from the ALJ opinion, and medical records dated 2014. Other than the page from the ALJ opinion, there is nothing in the record which shows these documents relate to the issue of plaintiff's disability during the relevant period, and the Court will give them no further consideration.

Pages 6, 7, 8, and 9 of plaintiff's attachment are from the relevant time period and relate to the diagnosis and treatment of plaintiff's cardiac condition in July 2010 and in June and July of 2012. As defendant points out, these documents are already in the record in their complete form. Therefore, the Court will review and reference them as they appear in the administrative record provided by defendant and will review the consideration of plaintiff's cardiac condition by the ALJ.

At the ALJ hearing, plaintiff testified that he suffered shortness of breath even when not doing anything and was easily fatigued. He said he suffered chest pain about twice a week and took nitrostat for it.

Review of plaintiff's medical records from pages 328 to 336 of the Transcript reveals that, in preparation for hernia surgery, plaintiff was examined by Dr. Haddad, a cardiologist, on June 8, 2012. When plaintiff was started on a stress test, he complained of chest pain after only one minute, the stress test was discontinued (Tr. 333-334), and plaintiff was referred to a second cardiologist, Dr. Friesen (Tr. 32). Plaintiff was given a Lexiscan myocardial perfusion examination (Tr. 330). This exam revealed a moderate to large sized fixed perfusion defect, which the doctor attributed to a likely "prior myocardial infarction involving the inferior wall, apex, distal anteroseptal and septal area." He found plaintiff's left ventricle was moderately dilated and the ejection fraction rate was reduced to 42% (Tr. 330). A sonogram with doppler was also conducted which produced similar findings that the left ventricular size was moderately enlarged with a left ventricular ejection fraction rate of 35-40%. In addition, "moderate concentric LV [left ventricular] hypertrophy, large spical thrombus is present." No clinically significant pericardial effusion was found, but mild aortic valve sclerosis and mild regurgitation were present (TR. 331).

On July 6, 2012, plaintiff attended a follow-up visit to learn his stress test results. At that time, plaintiff was prescribed Nitrostat, 0.4 mg. sublingual, one every 5 minutes as needed for chest pain with a maximum of 3 doses per episode; Cyclogenzaprine Hcl 10 mg. tab one as needed; Lisinopril 10 mg. one each morning, and B-50 complex (Tr. 328). He was also placed on daily aspirin (Tr. 329). It was also noted that plaintiff was on coumadin and Cipro (Tr. 329).

Plaintiff was diagnosed as a Class III cardiac, approved for a herniorrhaphy, and his coumadin was temporarily discontinued due to the upcoming surgery (Tr. 329).

At his follow-up visit, plaintiff requested a Cardiac Residual Functional Capacity Questionnaire be completed on him (Tr. 328). This was done by Dr. W. Glenn Friesen, M.D. F.A.C.C.[4]. Doctor Friesen noted plaintiff's diagnosis as a Class III cardiac patient, his old myocardial infarction, and his present shortness of breath on mild exertion. Doctor Friesen also noted plaintiff's Lexiscan at Northwest Texas Hospital and the results showing an old apical scar, no new ischemia, and a LVEF (left ventricular ejection fraction) of 42%. Doctor Friesen noted the normal rate was 65%. Doctor Friesen stated plaintiff's symptoms consisted of shortness of breath, fatigue, weakness, neuropathy, back, intercostal and femoral (lumbago) pain. He stated plaintiff suffered from chest wall pain all the time, with marked limitation of physical activity as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though he was comfortable at rest, and that plaintiff was not a malingerer (Tr. 333). Doctor Friesen opined that stress aggravated plaintiff's neuropathy and that plaintiff was incapable of even "low stress" jobs," noting plaintiff's inability to do more than one minute on the stress test (333-334). He further opined that plaintiff's physical symptoms and limitations caused emotional difficulties, depression or chronic anxiety, which contributed to the severity of plaintiff's subjective symptoms and functional limitations. He stated plaintiff experienced his cardiac symptoms constantly and that plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation (Tr. 334).

---

[4] The Court takes judicial notice of the fact that F.A.C.C. is an abbreviation for Fellow of the American College of Cardiology and denotes Dr. Friesen as a cardiac specialist.

Doctor Friesen listed plaintiff's prescribed medications at that time as Nitrostat, Coumadin, Lisinopril, Norco, Cyclobenzaprine, and Gabapentin (Tr. 334).

Doctor Friesen opined that plaintiff's impairments were expected to last at least twelve months (Tr. 334), and that, in a competitive work situation, plaintiff could walk 1 block slowly, and sit, stand/walk less than two hours in an 8 hour working day with normal breaks. He said plaintiff could occasionally lift less than 10 lbs., rarely twist, stoop, or crouch/squat and could never climb ladders or stairs (Tr. 335). He indicated plaintiff should avoid exposure to cold, heat, high humidity, wetness, smoke, perfume, soldering fluxes, solvents, fumes, dust, etc. (Tr. 336).

Doctor Friesen, M.D. F.A.C.C., also stated plaintiff's impairments were likely to be bad all the time (Tr. 336).

The Court notes that no other claim evaluator, medical consultant, or treating physician had before him the records concerning plaintiff's heart condition and no cardiac concerns formed any basis for their evaluations of plaintiff's residual functional capacity. Only the ALJ and the Appeals Council had the benefit of these records. It is noted that the April 2011 consultative exam by Dr. Burgesser of Panhandle Neurophysiology and the May 23, 2011 consultative exam by Dr. Frederick Cremona did not have Dr. Friesen's evaluation available. (Tr. 307-320).

In considering the detailed Residual Functional Capacity Questionnaire (RFC Questionnaire) completed by Dr. Friesen, M.D. F.A.C.C., the ALJ evaluated Dr. Friesen as a Treating Physician, noting Dr. Friesen was a physician from the clinic where the claimant receives treatment (Tr. 15). The ALJ noted that Dr. Friesen stated he had first treated plaintiff in June 2012 but that treatment records from that period do not indicate any examinations with this physician (Exhibit B8F, pp.1-2). The ALJ went on to state that, "[g]iven the lack of longitudinal treating relationship, and that these limitations appear to be based on the claimant's subjective complaints, the undersigned accords [Dr. Friesen's] opinion little weight." (Tr. 15). While this

analysis could be an attempt to meet the factors set by the Fifth Circuit that must be considered before rejecting the opinion of a treating physician, see *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), *overruled on other grounds in part by implication* in *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), it does not comply.

Controlling weight is assigned to the opinions of a treating physician if those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). Nevertheless, the determination of disability remains the province of the ALJ, who can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chalet*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Further, conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

The Court is familiar with the caselaw which provides that an ALJ need not explain in his or her written determination all of the evidence contained in the record. *See McFadden v. Astrue*, 465 Fed. Appx. 557, 559 (7th Cir. 2012)("an ALJ may not ignore entire lines of evidence contrary to the RFC determination but she need not discuss every piece of evidence in the record") (citing *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)); *Kornecky v. Commissioner of Social Security*, 161 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (holding an ALJ can consider evidence without directly addressing it); *NLRB v. Beverly Enterprises-Massachusetts*, 174 F.3d

13 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 765 (2d Cir. 1996) (An ALJ may resolve credibility disputes implicitly rather than explicitly where his "treatment of the evidence is supported by the record as a whole"); *Penalver v. Barnhart*, No. SA-04-CA-1107-RF, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment-he need not discuss all supporting evidence or evidence rejected."); *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. Mar. 12, 2004) ("in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence").

Even th ough the ALJ may not be required to set out all the details of the basis of his determination and decision to reject the opinion of a treating physician, the Fifth Circuit Court of Appeals has also held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), *overruled on other grounds in part by implication* in *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

These criteria include:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*Id.* at 456.

Further, even in cases where a treating physician's opinion does not satisfy the test for controlling weight, it is still entitled to deference. *Newton v. Apfel*, 209 F.3d at 453. When rejecting the opinion of a treating physician, or affording it little weight, an ALJ must consider each and every one of these six criteria. *Id.* A failure to do so warrants remand of the case so the proper analysis may be conducted. *See id.*

There simply is no indication the ALJ considered each and every one of the six criteria set by the Court in *Newton*, especially items 4, 5, and 6. In fact, the ALJ did not acknowledge that Dr. Friesen was a cardiac specialist. It is significant that there is no conflicting opinion in the record by any other physician, much less another cardiologist. At the time of the ALJ opinion, no other physician had viewed the recently produced record of plaintiff's heart condition. The ALJ does not state how the results of the tests performed on plaintiff do not support Dr. Friesen's opinion or how they contradict it, and there appears to be every indication these records provide ample support of plaintiff's condition.

Moreover, the ALJ does not identify and nothing in the RSF Questionnaire indicates Dr. Friesen was relying only on or primarily on plaintiff's subjective complaints in making his assessment of plaintiff's remaining abilities. The ALJ does not, however, identify where in the record these subjective complaints are to be found and this Court's review found only one entry of what might be a subjective complaint to the doctor. At page 329 of the Transcript there is an entry "short of breath one block, unable to work." Doctor Friesen found plaintiff could walk only 1 block, and that, slowly. But Dr. Friesen also had before him the stress test that plaintiff was not able to tolerate for over one minute.

It does not appear Dr. Friesen was unduly reliant upon plaintiff's complaints. Thus, it appears Dr. Friesen's opinion is supported by the medical evidence of record concerning plaintiff's heart condition and is consistent with that record.

Further, if Dr. Friesen's opinion was not evaluated by the ALJ as that of a Treating Physician, review of the RFC Questionnaire shows Dr. Friesen adds the letters M.D. F.A.C.C., that is, Fellow of the American College of Cardiology, indicating he is not merely a "physician from the clinic where the claimant receives treatment," but is, in fact, a cardiac specialist. Even if he is not a treating specialist, his opinion should have been evaluated on par with that of a consulting specialist.

Other than his determination that Dr. Friesen relied too much on plaintiff's subjective complaints and the length of the relationship the ALJ does not point to any evidence of record which would support his rejection of Dr. Friesen's opinion of plaintiff's RSF or his decision to give it little weight.

Doctor Friesen completed an RSF Questionnaire plaintiff presented when he appeared for his July 2012 follow-up appointment after the Lexiscan mycardial perfusion examination and sonogram with doppler were conducted to show the condition of plaintiff's heart. If Dr. Haddad were considered to be plaintiff's treating cardiac specialist, the only difference between Dr. Friesen and Dr. Haddad's knowledge of plaintiff's condition was that Dr. Friesen may not have been present at plaintiff's first visit in June of 2012, when the stress test was terminated after one minute and plaintiff was referred to Dr. Friesen and for the Lexiscan mycardial perfusion examination and sonogram. As shown by Dr. Friesen's references to plaintiff's specific test results, Dr. Friesen had before him plaintiff's record and the results of those tests. Doctor Friesen had knowledge of plaintiff's entire treatment history (short as it was) regarding his heart condition and, therefore, was as knowledgeable as Dr. Haddad concerning plaintiff's heart

condition, and arguably more knowledgeable than plaintiff's regular, non-cardiac-specialist treating physician. Further, while the ALJ emphasized there were no cardiovascular complaints until June 2012, the June 2012 examination revealed a prior heart attack. No evidence has been identified which suggests that plaintiff did not suffer that earlier heart attack sometime prior to June 2012, and in fact there is at least one entry of "Sept. 2008" at page 333 of the transcript. It is not clear whether that entry is a determination of when plaintiff suffered his earlier heart attack, but it is clear the objective medical evidence shows cardiac problems prior to June 2012.

In his review of the medical record, the ALJ expressly references plaintiff's consultative examination performed in April of 2011 (Tr. 307-311), his medical records in February of 2011 (Tr. 324, 282-283), his March and July 2012 treatment records (Tr. 325, 329), his Hepatitis C records from 1993 (Tr. 252), his consultative examination in April of 2011 (Tr. 307-311) and the state agency medical consultant's opinion of May 23, 2011 (Tr. 312-319). The latest of these, the state agency medical consultant opinion of May 23, 2011 (Tr. 312-319), to which the ALJ also gave little weight, is more than a year before the tests which resulted in plaintiff's diagnosis as a Class III cardiac patient and the RSF opinion of Dr. Friesen.

There are no medical records or medical opinions contemporary with the tests and opinion by Dr. Friesen, M.D.F.A.C.C. and there is no opinion in the record by anyone with knowledge of plaintiff's cardiac records which contradicts the RSF opinion given by Dr. Friesen. The ALJ did not point to any medical evidence contradicting Dr. Friesen. Further, the fact that the cardiologist opined that plaintiff's cardiac condition permitted him to do less than plaintiff himself testified he could do (plaintiff testified he could walk 3 blocks) does not weaken the validity of Dr. Friesen's opinion. A patient may try to engage in physical activity or think he can do activity above the level set by the physician, which could be detrimental to the patient.

Review of the record before the Court fails to reveal any evidence, much less substantial evidence, to support the decision of the ALJ to give little weight to the opinion of Dr. Friesen concerning plaintiff's heart condition and Residual Functional Capacity and requires the administrative decision that plaintiff is not disabled be REVERSED and the case REMANDED for further administrative proceedings, including but not limited to the entry of additional findings regarding plaintiff's cardiac impairments and his residual functional capacity, and the degree or severity of plaintiff's impairments with respect to his cardiac condition.

## V.
## RECOMMENDATION

It is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of benefits be REVERSED and the instant cause be REMANDED for further consideration.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation

to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 3rd day of September, 2015.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).